## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY ANN CONNOLLY, | &#124; |
| | &#124; |
| Plaintiff, | &#124; Civ. Action No. 2:24-cv-01902-JKS-CLW |
| | &#124; |
| v. | &#124; |
| | &#124; |
| CROSS RIVER BANK, UPSTART NETWORK, INC., THEOREM MAIN MASTER FUND LP, and UPSTART LOAN TRUST 2, | &#124; |
| | &#124; |
| Defendants. | &#124; |

## FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff, Mary Ann Connolly ("Plaintiff"), by way of this Complaint against Cross River Bank ("Cross River"), Upstart Network, Inc. ("Upstart"), Theorem Main Master Fund LP ("Theorem"),  and Upstart Loan Trust 2 ("Loan Trust"), alleges and states:

## I.    NATURE OF THE ACTION

1. Plaintiff brings this action to secure redress for Defendants Cross River and Upstart's conduct that included accessing Plaintiff's credit report without consent or any lawful reason, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and negligently allowing a loan to be fraudulently procured

in Plaintiff's name.  Additionally, Plaintiff brings the action against Upstart for not conducting a reasonable investigation as required by the FCRA, as well as an action against Upstart Loan Trust 2 seeking a declaratory judgment relating to the alleged debt.  Lastly, Plaintiff brings an action against Theorem for common law conversion.

## II.    JURISDICTION AND VENUE

2.  Venue is properly in New Jersey as the Defendants regularly conduct business there.  Jurisdiction is proper pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367 as to supplemental jurisdiction.

## III.    PARTIES

3.  Plaintiff is an individual who is a resident of, and domiciled in, the State of New Jersey, whose address is 7 Liberty Road, Bernardsville, New Jersey 07924.

4.  Defendant Cross River Bank is a New Jersey state chartered bank with a principal office address in Fort Lee, New Jersey and a bank branch located in Teaneck, New Jersey.

5.  Defendant Upstart Network, Inc. is a Delaware Corporation registered to do business in New Jersey.  Upstart is a wholly owned subsidiary of Upstart Holdings, Inc.

6.  Defendant Theorem Main Master Fund LP is a limited partnership registered in Grand Cayman, Cayman Islands and not registered to do business in New Jersey.  Theorem's general partner is Theorem Partners LLC.

7.  Defendant Upstart Loan Trust 2 is a Delaware Trust formed on July 19, 2016.

## IV.   FACTS

8.  On or about February 10, 2022, Plaintiff's husband (now estranged), Matthew C. Connolly, made, executed, and authenticated in writing, an application for a loan from Upstart Network, Inc. and Cross River Bank, using the personal identifying information, as that term is defined under N.J.S. § 2C:20-1, of Plaintiff (the "Application").

9.  The use of Plaintiff's information in the Application was not known to Plaintiff at all times relevant, nor was the use of such information ever authorized, consented to, or ratified after the fact by Plaintiff.

10.  The Application (see "Exhibit 1" attached hereto) was completed online on Upstart's website using Upstart's platform. Upstart was acting as an agent for Defendant Cross River at all times relevant and acted as an agent of Cross River in the receiving of and processing of the Application.  As per the Application, the loan decision was "Instant[ly] Approved."

11.  Defendant Upstart Network, Inc. is a company that, along with lending partners, such as Defendant Cross River Bank, originate and issue high

interest rate consumer loans using online applications and providing instant approvals.

12. Upstart's website boldly states "Get approved." "Most customers are instantly approved with no paperwork required." (See "Exhibit 2" attached hereto). Funds are then available the next business day. See "Exhibit 2."

13. Upstart Network, Inc. was incorporated in Delaware in 2012. Pursuant to a restructuring, Upstart Holdings, Inc. was incorporated in December 2013 and became the holding company of Defendant Upstart Network, Inc.

14. As stated by Upstart Holdings' co-founder and CEO, Dave Girouand, in its 2022 Annual Report, "Due to our investments in automation, last year a record 82% of personal loans required no human intervention in the process of originating the loan."

15. Upstart Holdings' 2022 10Q, filed with the United States Securities and Exchange Commission, states, in part:

> *Superior digital experience*  - Whether consumers apply for a loan through Upstart.com or directly through a lending partner's website, the application experience is streamlined into a single application process and the loan offers provided are firm. In the year ended December 31, 2022, 75% of Upstart-powered loans were instantly approved with no document upload or phone call required, an increase from 69% in 2021. Such automation improvements were due in large part to improvements to our AI models and the application of such models to different aspects of the loan process, including data verification and fraud detection.

16. Unbeknownst to Plaintiff, and without Plaintiff's authorization or approval, Matthew Connolly applied for a loan on the Upstart website. The Application contained the personal identifying information of Plaintiff, as well as Matthew's telephone number (not Plaintiff's), and contained incorrect information. What is not shown on the Application, but will show through discovery, is that an email address, that was not Plaintiff's, was used to communicate between Upstart and Cross River with Matthew Connolly. Not known to Plaintiff, a loan, ending in 535 (the "Loan"), was accepted and fraudulently executed by Matthew Connolly in Plaintiff's name, with Upstart acting as an agent or consumer lender on behalf of Cross River. (The "Promissory Note"). The Promissory Note was electronically signed on February 10, 2022 by Matthew Connolly forging the name of Plaintiff to the Loan documents. (See "Exhibit 3" attached hereto). At no time did Plaintiff provide permission to Matthew Connolly to sign on behalf of Plaintiff, nor has such forged signature been ratified by Plaintiff.

17. The Loan was funded on or about February 10, 2022 and placed in the joint checking account of Plaintiff and Matthew Connolly. This deposit was unknown to Plaintiff. Matthew Connolly removed the funds without Plaintiff's knowledge and used said funds for his own use and enjoyment.

18. Upon learning of the fraud, Plaintiff filed police reports (see "Exhibit 4" attached hereto) and an identity theft report with the Federal Trade Commission. (See "Exhibit 5" attached hereto).

19. Plaintiff reported the fraudulent Application and negligent issuance of the Loan to Transunion, a credit reporting bureau, and to Upstart, who, pursuant to the wording of the Loan, was acting as a "nonfiduciary agent" of Cross River.

20. According to the Promissory Note, Upstart was to collect the monthly payments for the Loan. Additionally, all communications regarding the Loan and Promissory Note were to be directed solely to Upstart as agent for Cross River.

21. Plaintiff disputed the fraudulent debt with Transunion, who, pursuant to the FCRA, contacted Upstart about Plaintiff's dispute as to the validity of the Loan. Additionally, Plaintiff provided to Upstart the police reports and the FTC report. Nonetheless, twice Upstart determined the debt to be valid. (See "Exhibit 6" attached hereto).

22. Upstart's 2022 Form 10K, filed with the United States Securities and Exchange Commission ("Form 10K"), Page 35, states, in part:

> Our AI models also target and optimize other aspects of the lending process, such as borrower acquisition, fraud detection, default timing, loan stacking, prepayment timing and fee optimization, and our continued

improvements to such models have allowed us to facilitate loans inexpensively and virtually instantly, with a high degree of consumer satisfaction and with an insignificant impact on loan performance. However, such applications of our AI models may prove to be less predictive than we expect, or than they have been in the past, for a variety of reasons, including inaccurate assumptions or other errors made in constructing such models, incorrect interpretations of the results of such models and failure to timely update model assumptions and parameters.

23. At some point in time, a date that will be identified through discovery, Cross River Bank assigned, sold, or otherwise transferred the Loan to Defendant Theorem Main Master Fund LP, who, as of December 9, 2022, accelerated the Loan, demanding from Plaintiff an immediate payment of $7,686.72, stating that the collection of the Loan debt was being "referred to a third party collection agency for collection." (See "Exhibit 7" attached hereto).

24. Upstart's 2022 Form 10K, filed with the United States Securities and Exchange Commission, Page 38, further states, in part:

> Cross River Bank, or CRB, a New Jersey-chartered community bank, originates a majority of the loans on our platform. In the years ended December 31, 2021 and 2022, CRB originated 55% and 51% respectively, of the Transaction Volume, Number of Loans. CRB also accounts for a large portion of our revenues. In the years ended December 31, 2021 and 2022, fees received from CRB accounted for 56% and 45%, respectively, of our total revenue. CRB retains a proportion of the loans they originate on their own balance sheet, and sells the remainder of the loans to us, which we in turn sell to institutional investors, sell to our warehouse trust special purpose entities or retain on our balance sheet. Our most

recent commercial arrangement with CRB began on January 1, 2019 and has a term of four years.

25. Cross River entered into a Consent Order with the Federal Deposit Insurance Company on March 8, 2023 in which Cross River, among a long list of other things, agreed that the Board of Directors of Cross River had to increase its supervision and direction of management and oversight and monitoring of the bank's "credit underwriting practices."  (See "Exhibit 8" attached hereto).

26. Page 47 of Upstart's 2022 Form 10K, filed with the United States Securities and Exchange Commission states, in part:

> **If we are unable to manage the risks associated with fraudulent activity, our brand and reputation, business, financial condition and results of operations could be adversely affected.**
>
> Fraud is prevalent in the financial services industry and is likely to increase as perpetrators become more sophisticated.  We are subject to the risk of fraudulent activity associated with borrowers and third parties handling borrower information and in limited situations cover certain fraud losses of our lending partners and institutional investors in our loan funding programs.  For example, in the third quarter of 2021 and the first quarter of 2022, we experienced temporary increases in fraudulent activity.  Fraud rates could also increase in a down-cycle economy.  We use several identity and fraud detection tools, including tools provided by third-party vendors and our proprietary AI models, to predict and otherwise validate or authenticate applicant-reported data and data derived from third-party sources.  If such efforts are insufficient to accurately detect and prevent fraud, the level of fraud-related losses of Upstart-powered loans

could increase, which would decrease confidence in our
AI lending marketplace.

27. Cross River, by and through its agent Upstart, processed the Application and

instantly approved the Loan without any supporting documents, or even a

telephone call to Plaintiff, relying solely on a computer algorithm or computer

program using artificial intelligence without any human intervention.

### V.   COUNT I – FAIR CREDIT REPORTING ACT
### (VIOLATION OF 15 U.S.C. § 1681b)
### (Against Defendants Cross River Bank and Upstart Network, Inc.)

28. Plaintiff incorporates paragraphs 1 to 27 as if fully stated herein.

29. At all times relevant, Upstart was acting as an authorized agent of Cross River.

30. The FCRA, 15 U.S.C. § 1681b, provides it is only legal to obtain a credit

report on a consumer with the written consent of the consumer or for certain

"permissible purposes", which insofar as pertinent are the extension of credit to, or

review or collection of an account of, the consumer, employment purposes, the

underwriting of insurance, or in connection with a business transaction that is

initiated by the consumer.

31. The requester must affirmatively certify to the consumer reporting agency that

a permissible purpose exists.   15 U.S.C. §1681b(f) states:

**Permissible purposes of consumer reports**

(f)   *Certain use or obtaining of information
prohibited.*  A person shall not use or obtain a consumer
report for any purpose unless

> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
> (2) the purpose is certified in accordance with section 607 [§ 1681e] by a prospective user of the report through a general or specific certification.

32. Defendants Upstart and Cross River, acting in concert with each other, obtained or pulled the consumer report of Plaintiff after certifying it was legitimately obtaining the report when, in fact, Defendants Upstart and Cross River did not have written permission or a "permissible purpose".

33. To obtain the consumer report of Plaintiff, the Defendants Upstart and Cross River had to affirmatively provide certification of a "permissible purpose".

34. Defendants Upstart and Cross River knew, or should have known, that they did not have any right to obtain the consumer report of Plaintiff.

35. Defendants Upstart and Cross River knew, or should have known, that they did not have either written consent or a "permissible purpose".

36. 15 U.S.C. §1681o, states:

> **(a) In general.**  Any person who is negligent in failing to comply with any requirement imposed under this title [15 USCS §§ 1681 et seq.] with respect to any consumer is liable to that consumer in an amount equal to the sum of ---
> 　　　 **(1)** any actual damages sustained by the consumer as a result of the failure; and
> 　　　 **(2)** in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

**(b) Attorney's fees.** On a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

37. The Plaintiff had her privacy illegally invaded as a result of Defendants Upstart and Cross River's negligent actions and is entitled to damages allowed by the FCRA, not only for the invasion of privacy but also to the extent of the loan that was fraudulently obtained in her name.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff prays for the following relief and judgment in her favor:

a.    Award damages to the Plaintiff for Count I, against Defendants Cross River Bank and Upstart Network, Inc.;

b.    Award the Plaintiff her costs, including attorney fees, against both Defendants; and

c.    Award such other and further relief as may be appropriate and proper.

## VI.    COUNT II – VIOLATION OF N.J.S. § 56:11-31
### (Against Defendants Cross River Bank and Upstart Network, Inc.)

38. Plaintiff incorporates paragraphs 1 to 27 as if fully stated herein.

39. At all times relevant, Upstart was acting as an authorized agent of Cross River.

40.    New Jersey Statutes, Section 56:11-31, provides it is only permissible to obtain a credit report on a consumer with the written consent of the consumer or for certain "permissible purposes", which insofar as pertinent are the extension of credit to, or review or collection of an account of, the consumer, employment purposes, the underwriting of insurance, or in connection with a business transaction that is initiated by the consumer.

41.    The requester must affirmatively certify to the consumer reporting agency that a permissible purpose exists.   N.J.S. § 56:11-31(g) states**:**

> **§56:11-31. Furnishing of consumer report; permissible circumstances.**
>
> ***
>
> **g.**  A Person shall not use or obtain a consumer report for any purpose unless:
>
> **(1)** the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
> **(2)** the purpose for its use is certified in accordance with section 5 of this act by a prospective user of the report.

42.    Defendants Upstart and Cross River, acting in concert with each other, obtained or pulled the consumer report of Plaintiff after certifying it was obtaining the report for a "permissible purpose" when, in fact, Defendants did not have written permission or a "permissible purpose".

43.   To obtain the consumer report of Plaintiff, Upstart and Cross River had to affirmatively provide certification.

44.   Defendants Upstart and Cross River knew, or should have known, that they did not have any right to obtain the consumer report of Plaintiff.

45.   Defendants Upstart and Cross River knew, or should have known, that they did not have either written consent or a "permissible purpose".

46.   New Jersey Statutes, Section 56:11-39, states:

### § 56:11-39.  Negligent noncompliance; liability.

**a.** Any person who is negligent in failing to comply with any requirement imposed under this act with respect to any consumer is liable to that consumer in an amount equal to the sum of:

> **(1)** any actual damages sustained by the consumer as a result of the failure; and
> **(2)** in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorneys' fees as determined by the court.

**b.** On a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorneys' fees reasonable in relation to the work expended in responding to the pleading, motion or other paper.

47.   The Plaintiff had her privacy illegally invaded as a result of Defendants Upstart and Cross River's negligent actions and is entitled to damages allowed by

N.J.S § 56:11-39, not only for the invasion of privacy but also to the extent of the

loan that was fraudulently obtained in her name.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff prays for the following relief and judgment in her

favor:

a.     Award damages to the Plaintiff for Count II, against Defendants Cross

River Bank and Upstart Network, Inc.;

b.     Award the Plaintiff her costs, including attorney fees, against both

Defendants; and

c.     Award such other and further relief as may be appropriate and proper.

### VII.    COUNT III – FAIR CREDIT REPORTING ACT
### (VIOLATION OF 15 U.S.C. § 1681s-2)
### (Against Defendant Upstart Network, Inc.)

48.    Plaintiff incorporates paragraphs 1 to 27 as if fully stated herein.

49.    15 U.S.C. § 1681n(a) states:

**Civil liability for willful noncompliance [15 U.S.C. §
1681n]**

(a)    *In general.*  Any person who willfully fails to
comply with any requirement imposed under this title with
respect to any consumer is liable to that consumer in an
amount equal to the sum of

(1)(A)     any actual damages sustained by the
consumer as a result of the failure or damages of not
less than $100 and not more than $1,000; or

(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

50.   15 U.S.C. § 1681o(a) states:

**Civil liability for negligent noncompliance [15 U.S.C. § 1681o]**

(a) *In general*.  Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of ---

   (1) any actual damages sustained by the consumer as a result of the failure; and

   (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

51.   15 U.S.C. § 1681i(a)(2) states:

**Procedure in case of disputed accuracy [15 U.S.C. § 1681i]**

(a) Reinvestigations of Disputed Information

(2) Prompt Notice of Dispute to Furnisher of Information

 (A) *In general.*  Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of

information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

(B) *Provision of other information.* The consumer reporting agency shall promptly provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer or the reseller after the period referred to in subparagraph (A) and before the end of the period referred to in paragraph (1)(A).

52. 15 U.S.C. § 1681s-2(a) states, in part:

**Responsibilities of furnishers of information to consumer reporting agencies [15 U.S.C. § 1681s-2]**

(a) Duty of Furnishers of Information to Provide Accurate Information

(1) Prohibition

(A) *Reporting information with actual knowledge of errors.* A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

(B) *Reporting information after notice and confirmation of errors.* A person shall not furnish information relating to a consumer to any consumer reporting agency if

(i) the person has been notified by the consumer, at the address specified by the

person for such notices, that specific information is inaccurate; and

(ii)    the information is, in fact, inaccurate.

53.    15 U.S.C. § 1681s-2(a)(6) states:

(6) Duties of Furnishers Upon Notice of Identity Theft-Related Information

(A)    *Reasonable procedures.*  A person that furnishes information to any consumer reporting agency shall have in place reasonable procedures to respond to any notification that it receives from a consumer reporting agency under section 605B relating to information resulting from identity theft, to prevent that person from refurnishing such blocked information.

(B)    *Information alleged to result from identity theft.* If a consumer submits an identity theft report to a person who furnishes information to a consumer reporting agency at the address specified by that person for receiving such reports stating that information maintained by such person that purports to relate to the consumer resulted from identity theft, the person may not furnish such information that purports to relate to the consumer to any consumer reporting agency, unless the person subsequently knows or is informed by the consumer that the information is correct.

54.    15 U.S.C. § 1681s-2(b)(1) states:

(b) Duties of Furnishers of Information upon Notice of Dispute

(1) *In general.*   After receiving notice pursuant to section 611(a)(2) [§ 1681i] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall

(A)   conduct an investigation with respect to the disputed information;

(B)   review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [§ 1681i];

(C)   report the results of the investigation to the consumer reporting agency;

(D)   if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –

(i)   modify that item of information;

(ii)   delete that item of information; or

(iii)   permanently block the reporting of that item of information.

55.    In June or July of 2022, Plaintiff disputed with Transunion the alleged Upstart/Cross River Loan.  Prior to Plaintiff's dispute, Cross River sold the Loan to Theorem.

56.    Pursuant to the Fair Credit Reporting Act, Transunion is defined as a "consumer reporting agency."

57.    Pursuant to the Fair Credit Reporting Act, Transunion reported Plaintiff's dispute to Defendant Upstart.

58.    Pursuant to the Fair Credit Reporting Act, Defendant Upstart was required to conduct a reasonable investigation into the validity of the debt.

59.    According to Defendant Upstart, an internal investigation was conducted and Upstart determined the debt to be validly owed by Plaintiff.

60.    During Defendant Upstart's investigation, Plaintiff supplied Upstart with the police reports and an FTC Identity Fraud report.

61.    The evidence supporting Plaintiff's claim of identity theft was ignored by Upstart.    Defendant Upstart quickly concluded its investigation and began incorrectly reporting this debt to the credit reporting agencies again.

62.    Plaintiff has been damaged by Upstart's conduct, including emotionally. Plaintiff's credit has been continually damaged as a result of continued incorrect reporting the Loan as hers.

63.    Plaintiff has continually been harassed by Upstart for payment of this fraudulently obtained Loan.

64.    Plaintiff incurred a cost having to pay counsel (not undersigned counsel) to correspond with Upstart to stop harassing Plaintiff.

65.    Pursuant to the FCRA, Defendant Upstart had a duty to conduct a "reasonable" investigation. Upstart's lack of thoroughness, not only in its processing of the Application and subsequent issuance of the Loan, was compounded by its lack of investigative depth. A reasonable investigation would have shown the Loan does not belong to Plaintiff.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff prays for the following relief and judgment in her favor:

a.    Award damages to the Plaintiff for Count III, against Defendant Upstart Network, Inc.;

b.    Award punitive damages to Plaintiff for Count III against Defendant Upstart Network, Inc.;

c.    Award the Plaintiff her costs, including attorney fees, against Defendant Upstart Network, Inc.; and

d.    Award such other and further relief as may be appropriate and proper.

## VIII.  COUNT IV – NEGLIGENCE
### (Against Defendants Cross River Bank and Upstart Network, Inc.)

66.    Plaintiff incorporates paragraphs 1 to 27 as if fully stated herein.

67.    At all times relevant, Upstart was acting as an authorized agent of Cross River and all actions taken by Upstart were for the benefit of both Upstart and Cross River.

68.    Defendant Upstart, as an agent of Cross River, processed an online request for credit in the name of Plaintiff, submitted illegally by a person other than Plaintiff.

69.    The credit application was not initiated, approved, authorized, or ratified by Plaintiff.  The application process and subsequent approval and funding of the Loan was unknown to Plaintiff until months after the completion of the process.

70.    The Application contains errors that should have been verified prior to the issuance of the Loan.  The errors include an inaccurate email address, a telephone number that lists a Connecticut area code that was not Plaintiff's, and an incorrect "area of study."

71.    Had either Defendant Upstart or Cross River taken even a limited amount of time performing due diligence prior to the issuance of the Loan, the errors and identity theft of Plaintiff would have been noticed and no loan in Plaintiff's name would have been issued.

72.    In 2022, Cross River originated 51% of the loans processed by Upstart Holdings' online platforms and accounted for 45% of Upstart Holdings' total revenue.

73.    Upstart acts as an agent of Cross River by providing an online platform for consumers, or identity thieves, to type in certain basic information and be given instant approval for personal, high interest loans, from Cross River.  Upstart benefits financially from loans issued through its online platform, funded by Cross River. The Application for the Loan was instantly approved.

74.    Upstart's website clearly states: "The majority of borrowers on the Upstart marketplace are able to receive an instant decision upon submitting a completed application, without providing supporting documents …" Additionally if the offered loan is accepted "by 5pm EST" the loan "funds will be sent on the next business day."

75.    Upstart and Cross River owe a duty of care to those persons, including Plaintiff, whose names and basic identity information are used in the attempt to obtain a loan on their online platform.

76.    Upstart and Cross River tout their online consumer loan business as providing instant loan approvals based upon artificial intelligence (AI) based computer programs.  The Loan approval and issuance did not involve any human intervention that would have provided for a prudent duty of care to Plaintiff, and others, to assure that an applicant is actually the specified applicant and not an applicant whose identifying information had been illegally used without their permission, such as in the case of Plaintiff.

77.    A prudent person would have, at least, a minimum amount of human contact involved in the process, if not during the application process, then prior to any loan actually being disbursed.

78.    Identity theft and illegal procurement of loans is reasonably foreseeable under the AI loan process used by Defendants Cross River and Upstart, as stated in Upstart Holdings, Inc. 2022 10K filing.

79.    Cross River and its agent, Upstart, did not provide the duty of care owed to Plaintiff, and as was reasonably foreseeable, Plaintiff was issued a loan in her name through the AI based process which was not initiated or approved by Plaintiff, nor used by Plaintiff, using her stolen personal identifying information.

80.    As a result of the negligently issued loan, Plaintiff has been, and continues to be damaged, not only by the amount of the loan, now in default, but by the severe damage to Plaintiff's credit.

**PRAYER FOR RELIEF**

Wherefore, the Plaintiff prays for the following relief and judgment in her favor:

a.    Award damages to the Plaintiff for Count IV, against Defendants Cross River Bank and Upstart Network, Inc.;

b.    Award the Plaintiff her costs, including attorney fees, against both Defendants; and

c.  Award such other and further relief as may be appropriate and proper.

## IX.  COUNT V – DECLARATORY JUDGMENT PURSUANT TO N.J.S. § 2A:16-52
### (Against Defendant Upstart Loan Trust 2)

81.  Plaintiff incorporates paragraphs 1 to 27 as if fully stated herein.

82.  N.J.S. § 2A:16-52 states:

**§ 2A:16-52.  Declaration of rights, status and other legal relations**

All courts of record in this state shall, within their respective jurisdictions, have power to declare rights, status and other legal relations, whether or not further relief is or could be claimed; and no action or proceeding shall be open to objection on the ground that a declaratory judgment is demanded.

83.  N.J.S. § 2A:16-53 states:

**§ 2A:16-53.   Questions determinable and rights declarable**

A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

84.  Plaintiff is the victim of identity theft and is being further and continually victimized by the continued actions of Defendant Upstart Loan Trust 2 not cancelling or voiding the Loan.

85.     Plaintiff's estranged husband used, without authorization, approval or ratification, Plaintiff's personal identifying information in order to obtain the Loan underlying this action.  He then used the funds for his illicit extramarital affair. The Loan was obtained without the knowledge or approval of Plaintiff.

86.     Plaintiff, after finding out about the Loan, did what was required after an identity theft, namely, reporting the incident to the local police and to the FTC, specifically naming her husband.  Plaintiff also disputed the debt directly with Transunion and Upstart, as the servicing agent for the Loan.

87.     Within weeks of the issuance of the Loan, Defendant Cross River Bank sold, or otherwise transferred the Loan to Defendant Theorem Main Master Fund LP.  In December 2023, Theorem sold the Loan to Velocity Investments, LLC.  The Loan was recently purchased from Velocity Investments, LLC by Defendant Upstart Loan Trust 2.

88.     According to Upstart, it conducted an "investigation" into the identity theft allegation of Plaintiff and determined that the "debt was valid."

89.     Defendant Upstart continued to negatively report Plaintiff to credit bureaus. Additionally, Upstart continued to accelerate the Loan, demanding that Plaintiff immediately pay $7,686.72.  Defendants Upstart and Theorem also previously informed Plaintiff that she and the debt had been "referred to a third party collection agency for collection."

90.    Plaintiff did not authorize her estranged husband to use her personal identifying information to apply for the Loan, reported the Loan as fraudulently procured in her name, did not use the funds for herself, and was unaware of the funds being deposited into the couples' joint bank account.  Plaintiff continues to be damaged, both financially and emotionally, by Upstart's continued collection efforts and negative reporting.

91.    Plaintiff's only option is a declaratory judgment that this debt is not hers and that she bears no financial responsibility for such debt.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff prays for the following relief and judgment in her favor:

a.    Issue a Declaratory Judgment declaring that the debt alleged by Defendant Upstart Loan Trust 2 is not Plaintiff's and that Plaintiff has no liability for payment for said debt;

b.    Award the Plaintiff her costs, including attorney fees, against Defendant Upstart Loan Trust 2; and

c.    Award such other and further relief as may be appropriate and proper.

## X.    COUNT VI – CONVERSION
## (Against Defendant Theorem Main Master Fund LP)

92.    Plaintiff incorporates paragraphs 1 to 27 as if fully stated herein.

93.    Plaintiff did not sign, electronically or otherwise, the Application.

94.     Plaintiff did not authorize, or otherwise give Defendant Upstart or Defendant Theorem permission to remove funds from her checking account at Bank of America.

95.     Despite the lack of Plaintiff's permission, Upstart, as an agent for Theorem, removed funds from Plaintiff's Bank of America checking account via electronic transfers or Automated Clearing House ("ACH") transfers.

96.     Defendant Theorem financially benefitted by taking, without permission, Plaintiff's funds.

97.     Plaintiff was in lawful, immediate possession of the funds in her Bank of America checking account and Defendant Theorem interfered with Plaintiff's rights and possession of Plaintiff's funds by taking, without her authorization or permission, the following amounts on the following dates from her Bank of America checking account:

| | |
|---|---|
| March 10, 2022 | $187.92 |
| April 11, 2022 | $187.92 |
| May 10, 2022 | $187.92 |
| June 10, 2022 | $187.92 |
| July 11, 2022 | $187.92 |

98.     Defendant's illegal taking of Plaintiff's funds without her authorization or her permission damaged Plaintiff in an amount of at least $939.60.

**PRAYER FOR RELIEF**

Wherefore, the Plaintiff prays for the following relief and judgment in her

favor:

a.    Award damages to Plaintiff for Count VI against Defendant Theorem

Main Master Fund LP;

b.    Award the Plaintiff her costs, including attorney fees, against Defendant

Theorem Main Master Fund LP; and

c.    Award such other and further relief as may be appropriate and proper.

## XI.    JURY DEMAND

Plaintiff demands trial by jury for all issues so triable.


Dated:  April 10, 2024

<div style="margin-left:40%">

*/s/ Leo W. Desmond*
Leo W. Desmond, Esq.
Attorney ID Number: 013191994
DESMOND LAW P.A.
385 Route 24, Suite 3H
Chester, New Jersey 07930
(908) 955-7906
lwd@desmondlaw.com

*Attorney for Plaintiff*

</div>

## **CERTIFICATE OF SERVICE**

I, Leo W. Desmond, hereby certify that on April 10, 2024, a true and accurate copy of the above document was electronically filed with the Clerk of the Court by using the CM/ECF system which will send Notice of Electronic Filing (NEF) to all counsel of record.

*/s/ Leo W. Desmond*
Leo W. Desmond
Attorney ID Number: 013191994

Dated:  April 10, 2024